**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | | |
|---|---|---|
| **THOMAS J. CARTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08-cv-4396 |
| | ) | |
| **SIEMENS BUSINESS SERVICES,** | ) | |
| **DEBRA BARRETT, BRUCE YORK** | ) | Honorable Amy J. St. Eve |
| **and DON OLNEY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT DON OLNEY'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Don Olney ("Defendant or "Olney"), by and through his attorneys, McGuireWoods LLP, and pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6) respectfully submits this Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Complaint. In support of his motion, Olney states as follows:

**INTRODUCTION**

Plaintiff, Thomas J. Carter's ("Plaintiff") Complaint alleging counts of defamation and retaliatory discharge against his former employer, Olney and two other managers, should be dismissed for a variety of reasons. First, this Court should quash the service of summons and dismiss Plaintiff's Complaint because Olney did not receive the summons within 30-days of its issuance as required by Illinois Supreme Court Rule 102(b). Second, this Court does not possess personal jurisdiction over Olney. Olney is not an Illinois citizen, he does not work in Illinois, nor does own property in Illinois. Moreover, most communications and interactions between Plaintiff and Olney occurred via telephone and e-mail. Because Olney has not taken any action

which would subject him to the laws of Illinois, this Court lacks personal jurisdiction over Olney.    Third, Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff's defamation claim is time-barred by Illinois one-year statute of limitations.  Plaintiff's cannot bring his retaliatory discharge claim against Olney individually because Olney was Plaintiff's supervisor and cannot be held liable for retaliatory discharge in Illinois.  Moreover, even if Olney could be liable, Plaintiff's retaliatory discharge claim is preempted by the Illinois Human Rights Act.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff, a retired Army officer, began his employment with Siemens Business Services on February 8, 2005.  (See Plaintiff's Complaint ("Comp.") (Docket Document No. 1) ¶ 6.)  On February 8, 2006, Plaintiff spoke with co-worker, Debra Barrett ("Barrett"), regarding a work issue.  (Comp. Exhibit ("Exh.") A at p. 1.)  During this conversation, Plaintiff "started to rant about how upset he was at the 'one that need not be mentioned,'" referring to Olney.  (Id.) Plaintiff then stated, "I'm so mad if I was down there I'd assemble my [military term] troop and kill him," again referring to Olney.  (Id.)

Later that night, Barrett memorialized the threat in an e-mail to herself and then read and forwarded it to managers David Frazier ("Frazier") and Bruce York ("York").   (Comp. ¶ 8; Comp. Exh. A at pp. 1-2.)  On February 10, 2006, York sent an e-mail to SBS attorneys Philip Paseltiner and Larry Callahan about Plaintiff's threat and about other issues with Plaintiff's work performance.  (Comp. ¶ 9; Comp. Exh. B.)  Regarding Plaintiff's threat, York wrote, "Tom has a former military background perceived to be in the type of unit that was involved in killing.  Don Olney is concerned that Tom might actually carryout the threat."  (Id.)  On February 13, 2006,

\6451296.2

York discussed the threat with Plaintiff, and then terminated his employment with SBS.  (Comp. ¶¶ 10-12.)

## PROCEDURAL HISTORY

On June 12, 2006, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights (the "IDHR") alleging that that SBS discriminated against him because its decision to terminate his employment was motivated by his military status.

On January 4, 2008, Plaintiff filed a Complaint in the Circuit Court of Cook County, Illinois, First Municipal District naming SBS, Debra Barrett, Bruce York and Don Olney (collectively "Defendants") as Defendants.  (Comp. at p. 1.)  Five months later, on July 5, 2008, a Montgomery County Sheriff delivered a copy of the Complaint and a Summons dated January 4, 2008 to Olney's home in Centerville, Ohio. (*See* Affidavit of Don Olney ("Olney Aff.") at ¶ 12 attached hereto as Exhibit A.)

On August 4, 2008, Olney removed the action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois on the basis of diversity jurisdiction.  In his Complaint, Plaintiff brings claims for defamation and retaliatory discharge against the Defendants.  He is seeking $1,340,000 in monetary damages.

## LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(2) Legal Standard.

Federal Rule of Civil Procedure 12(b)(2) permits the court to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).   To successfully oppose a Rule 12(b)(2) motion, the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over nonresident.  *Solo Cup Co. v. First Southwest Vending and Food Serv.,* No. 07 C 4384,

\6451296.2

2008 WL 2787442, *3 (N.D. Ill. July 17, 2008) *citing RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d

1272, 1276 (7th Cir. 1997).[1]

When analyzing personal jurisdiction, the court may consider affidavits submitted by the

parties, without an evidentiary hearing, to determine if the plaintiff has made a prima facie

showing of personal jurisdiction. *Banc Corp. USA v. Perez,* No. 05 C 7307, 2006 WL 1594100,

*2 (N.D. Ill. June 5, 2006) *citing RAR, Inc.,* 107 F.3d at 1276.[2]  "Any conflict in the pleadings

and affidavits are to be resolved in the plaintiff's favor, but the court accepts as true any facts

contained in the defendant's affidavits that remain unrefuted by the plaintiffs." *Banc Corp. USA,*

2006 WL 1594100 *citing Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines,*

*Inc.,* 262 F. Supp. 2d 898, 904-5 n. 3 (N.D. Ill. 2003).

## B.    Fed. R. Civ. P. 12(b)(6) Legal Standard.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

should accept as true all well-pleaded factual allegations of the complaint by drawing all

reasonable inferences in the plaintiff's favor. *Alicea-Hernandez v. Catholic Bishop of Chicago,*

320 F.2d 698, 702 (7th Cir. 2003).  A complaint may be dismissed where the plaintiff lacks a

cognizable legal theory, or states facts insufficient to support a cognizable legal theory. *Id.*

Dismissal is properly granted if it is clear that no set of facts which the plaintiff could prove

consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41

(1957).

In considering a motion to dismiss, the court may rely on documents referenced in the

complaint and relied upon by the plaintiff. S*ee Wright v. Associated Insurance Companies, Inc.,*

---

[1] A copy of *Solo Cup Co. v. First Southwest Vending and Food Serv.,* No. 07 C 4384, 2008 WL 2787442 (N.D. Ill. July 17, 2008) is attached hereto as Exhibit B.
[2] A copy of *Banc Corp. USA v. Perez,* No. 05 C 7307, 2006 WL 1594100 (N.D. Ill. June 5, 2006) is attached hereto as Exhibit C.

\6451296.2

29 F.3d 1244, 1248 (7th Cir. 1994) (holding that in considering motion under Rule 12(b)(6), court may consider documents referred to in the complaint and central to it without converting motion to one for summary judgment).  In addition, "documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."  *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

## ARGUMENT

**A.     This Court Should Quash the Service of Summons and Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(5) Because Olney Received The Summons More Than 30 Days After Its Issuance.**

The service of summons should be quashed and Plaintiff's Complaint dismissed because Olney did not receive the Summons and Complaint until over five months after the Summons expired under the Illinois law.  In ruling on this motion to quash service of summons, the Court must apply Illinois state law to conduct that occurred while the action was in state court.  *Ojea v. Mazda Motor Corp., Inc.,* No. 07 C 3635, 2007 WL 3087122 (N.D. Ill. Oct. 18, 2007) *citing Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1122 (7th Cir. 2001); *Allen v. Ferguson,* 791 F.2d 611, 616 n. 8 (7th Cir. 1986).[3]  Illinois state law applies here because Olney received the Summons and Complaint while this action was pending in the Circuit Court of Cook County. *Ojea,* 2007 WL 3087122.

Illinois law requires that summons be served within 30 days of issuance.  Ill. Sup. Ct. R. 102(b).  Illinois does not provide any exceptions to the 30-day time limit nor any means by which the time may be extended.  Ill. Sup. Ct. R. 102(b); *Ojea,* 2007 WL 3087122.  In order to

---

[3] A copy of *Ojea v. Mazda Motor Corp., Inc.,* No. 07 C 3635, 2007 WL 3087122 (N.D. Ill. Oct. 18, 2007) is attached hereto as Exhibit D.

\6451296.2

ensure evenhanded administration of the law, federal courts must strictly adhere to state rules of procedure. *Ojea,* 2007 WL 3087122.

In this case, the Summons was issued the same day the Complaint was filed on January 4, 2008. (*See* Docket Document No 1.) The Summons was required to be served within 30 days of its issuance. Ill. Sup. Ct. R. 102(b). Accordingly, on February 3, 2008, the Summons expired. Olney, however, did not receive the Summons until July 5, 2008 - five months after the Summons expired. (Olney Aff. ¶ 12.) Thus, proper service was not effected upon Olney. *See Ojea,* 2007 WL 3087122 (granting defendant's motion to quash service of summons where the summons was served on the defendant twenty days after it expired); *see also Hardy v. Bankers Life & Casualty Co.,* 153 N.E.2d 269, 271 (Ill. App. 1958) (affirming the trial court's decision to quash the service of summon where the summons was served later that 30 days after its issuance.) Accordingly, the service of summons should be quashed and Plaintiff's Complaint dismissed.

**B.    This Court Should Dismiss Plaintiff's Complaint Pursuant to Fed R. Civ. P. 12(b)(2) Because Olney Is Not Subject To The Jurisdiction Of This Court.**

The Seventh Circuit has taught that "[a] district court sitting in diversity jurisdiction has personal jurisdiction over a non-resident defendant only if a court of the state in which it sits would have jurisdiction." *Banc Corp. USA v. Perez,* No. 05 C 7307, 2006 WL 1594100, *2 (N.D. Ill. June 5, 2006) *citing RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1272 (7th Cir. 1997). Because the Illinois statutory and constitutional inquiries essentially collapse into the Illinois constitutional inquiry, when making a determination as to personal jurisdiction, the Court need only consider whether an assertion of personal jurisdiction over Defendant would comport with state and federal constitutional standards. *Banc Corp. USA,* 2006 WL 1594100, *2 *citing RAR, Inc.,* 107 F.3d at 1276.

6

Subject to the limits of due process, a court may exercise two types of personal jurisdiction over an out of state defendant: general or specific. *Glass v. Kemper Corp.,* 930 F. Supp. 332, 338 (N.D. Ill. 1996). General jurisdiction arises when the nonresident has "continuous and systematic general business contacts" with the forum state. *Id.* The contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *Id. citing International Shoe Co. v. Washington,* 326 U.S. 310, 318 (1945). This is a fairly high standard requiring a large number of contacts. *Id.*

Olney's contacts with Illinois were sporadic and insubstantial at best and could not be considered "continuous and systematic general business contacts." Indeed, Olney's most consistent contact with Illinois came in the form of phone calls and e-mails to and from the Plaintiff. (*See* Olney Aff. ¶ 6.)

Courts have found a lack of general jurisdiction over nonresident defendants based upon much greater contacts with the forums than Olney had with Illinois. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) (no general jurisdiction where nonresident defendant negotiated contract in forum, purchased 80% of its helicopter fleet from company in forum state, sent pilots to and from forum state for training and received over $5 million in payments drawn upon bank in forum state); *Obermeyer v. Gilliland,* 873 C.D. Ill. 1995) (no general jurisdiction in Illinois where defendant truck driver, as his only route, regularly drove truck from Michigan to Illinois and was en route to Illinois when accident occurred in Michigan.) If the defendants in the foregoing cases were not found to have established general jurisdiction with the forum state, then Olney's far fewer inconsequential

contacts with Illinois certainly do not satisfy this standard and this Court has no general jurisdiction over Olney.

Specific jurisdiction in Illinois may be exercised over a non-resident defendant consistent with due process if two conditions are satisfied. First, the defendant must have "minimum contacts" with Illinois, by which the defendant has purposely availed himself of "the privilege of conducting activities within [Illinois], thus invoking the benefits and protections of its law." *Banc Corp. USA,* 2006 WL 1594100, *4. When a plaintiff asserts that the court has specific personal jurisdiction over a nonresident defendant, the cause of action asserted by the plaintiff must "arise out of" or be "related to" the contacts that occurred in Illinois. *Id.* With this regard, the defendant himself, rather than the plaintiff or a third party, must create the contacts. *Id.* This requirement ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue. *Id.* (citations omitted).

Pursuant to the fiduciary shield doctrine, a court cannot exercise jurisdiction over a non-resident defendant who has performed acts in Illinois solely as a representative of his employer, and not for his personal benefit. *Glass,* 930 F. Supp. at 340; *citing Rollins v. Ellwood,* 565 N.E.2d 1302, 1314 (Ill. 1990) (adopting the fiduciary shield doctrine as a principle of Illinois constitutional law concerning personal jurisdiction, "[t]he effect [of which] is to limit the jurisdiction power of the Illinois court.").

Here, the Court lacks specific personal jurisdiction over Olney. Olney has never lived or maintained a residence in Illinois, owned real property in Illinois, maintained an office in Illinois, maintained a telephone number in Illinois, voted or been liable for income taxes in Illinois, or held a job in which he was based in Illinois. (*See* Olney Aff. ¶¶ 8-11.) Olney's only

\6451296.2

noteworthy contact with Illinois occurred in the form of telephone calls and e-mails to and from the Plaintiff through the course of Olney's employment with SBS.  (*See* Olney Aff. ¶¶ 6-7.)  The act of corresponding with the Plaintiff via telephone and e-mail is insufficient for this Court to assert personal jurisdiction over Olney.

Moreover, this Court lacks personal jurisdiction over Olney based on the fiduciary shield doctrine because all of Olney's allegedly tortious acts occurred through his employment with SBS.  At the time the alleged torts occurred, both Olney and Plaintiff worked for SBS.  (*See* Olney Aff. ¶ 2.)  At all times relevant to this matter, Olney worked out of SBS's Mason, Ohio office and Plaintiff worked out of SBS's Lake Zurich, Illinois Data Center.  (*See* Olney Aff. ¶ 3.)  On November 7, 2005, Olney became Plaintiff's Acting Manager.  (*See* Olney Aff. ¶ 4.)  Prior to this date, Olney and Plaintiff worked in a co-worker capacity.  (*See* Olney Aff. ¶ 5.)  With the exception of one business trip Plaintiff made in March 2005 to SBS's Mason, Ohio office, all of Olney's interactions and communications with Plaintiff occurred via telephone and e-mail.  (*See* Olney Aff. ¶ 6.)  Such communications and interactions occurred as a result of Olney's work duties and were initiated on behalf of SBS.  (*See* Olney Aff. ¶ 7.)

Because Olney made contacts with Illinois and the Plaintiff solely as a representative of his employer and the nature and quality of Olney's contacts with Illinois and Plaintiff were characterized by his status as an SBS employee, it would not be fair, just or reasonable for this Court to use this conduct to assert personal jurisdiction over him as an individual.  *See Glass,* 930 F. Supp. at 340 (dismissing a nonresident defendant under the principals of the Illinois fiduciary shield doctrine where the defendants' contacts with Illinois were "a product of, and motivated by, his employment situation and not his personal interests"); *see also Banc Corp. USA,* 2006 WL 1594100 (dismissing a nonresident defendant based on the fiduciary shield

\6451296.2

doctrine where the defendant's alleged tortious acts were performed on behalf of her employer).

Accordingly, the Court lacks personal jurisdiction over Olney and the Complaint should be dismissed.

### C. Plaintiff's Defamation Claim Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because It Is Barred By The One-Year Statute of Limitations For Defamation Claims In Illinois.

Illinois' one-year statute of limitations bars Plaintiff's claim for defamation of character. 735 ILCS 5/13-201 states that "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." A cause of action for defamation generally accrues on the date the alleged defamatory statements are made. *Oberth v. Kirth,* No. 06 C 2877, 2006 WL 3743712, *3 (N.D. Ill. Dec. 13, 2006).[4] Accordingly, the Court should dismiss this count.

Plaintiff alleges that he was defamed on February 10, 2006 when Barrett sent an e-mail to SBS, York and Olney which contained "false and defamatory statements about him [Plaintiff]." (Comp. ¶ 15.)  On the same day, Plaintiff also alleges that York sent an e-mail to an SBS attorney stating that Plaintiff "has a military background perceived to be the type of unit that was involved in killing." (Comp. ¶ 9.)  Finally, Plaintiff claims that again on February 10, 2008, he was defamed when Defendants allegedly provided "the Lake County Police Department with a written or verbal statement containing the same false and defamatory statements." (Comp. ¶ 16.) Plaintiff alleges that he became aware of these defamatory statement during a meeting with York on February 13, 2006, when York asked him "who [he] was going to kill." (Comp. ¶¶ 10-12.)

Here, Plaintiff states on the face of his Complaint that all purportedly defamatory statements were published on or before February 10, 2006, (comp. ¶¶ 8-9, 15-16) and that he

---

[4] A copy of *Oberth v. Kirth,* No. 06 C 2877, 2006 WL 3743712 (N.D. Ill. Dec. 13, 2006) is attached hereto as Exhibit E.

became aware of them, at the very latest, on February 13, 2006. (Comp. ¶¶ 10-11.) Yet, Plaintiff did not file his Complaint until January 4, 2008 - nearly two years after the statements were published. (Comp. at p. 1.) Accordingly, Plaintiff's Complaint was not filed within one year as required by the Illinois statute of limitations and cannot proceed. *See Oberth,* 2006 WL 3743712 at *3 (dismissing plaintiff's defamation claims where plaintiff filed his complaint after the one-year limitations period expired); *see also Tabora v. Gottlieb Memorial Hosp.*, 279 Ill. App. 3d 108 (Ill. App. 1996) (dismissing the plaintiff's defamation claim as barred by the one-year statute of limitations where the plaintiff filed his complaint 13 months after he "was clearly aware or should have known of" the defendants' defamatory remarks).

> **D.    Plaintiff's Retaliatory Discharge Claim Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because An Individual Supervisor May Not Be Held Liable For Retaliatory Discharge In Illinois.**

This Court should dismiss Plaintiff's claim for retaliatory discharge because an individual supervisor cannot be held liable for a retaliatory discharge under Illinois law. The Illinois Supreme Court has explicitly held that "the only proper defendant in a retaliatory discharge action is the plaintiff's former *employer*," and that individual supervisors may not be held liable for retaliatory discharge. *Buckner v. Atlantic Plant Maint., Inc.*, 182 Ill. 2d 12, 22 (Ill. 1998) (emphasis added).

In *Buckner*, the plaintiff sued his former employer as well as several individual defendants alleging retaliatory discharge. One of the individuals moved to dismiss on the grounds that a retaliatory discharge action could not be brought against any party other than the plaintiff's former employer. The trial court granted the motion to dismiss, and the appellate court affirmed. The Illinois Supreme Court allowed plaintiff to appeal in order to resolve this issue.

\6451296.2

The Supreme Court's decision in *Buckner* was absolutely clear: "…We hold that the only proper defendant in a retaliatory discharge action is the plaintiff's former employer." 182 Ill. 2d at 20. The Supreme Court explained:

> In this case, we are again presented with a request to expand the retaliatory discharge cause of action. The plaintiff asks that we allow this cause of action to be brought not only against the plaintiff's former employer, but also against the agent or employee of the employer who carried out the discharge of the plaintiff on the employer's behalf. Given this court's past precedent admonishing against the expansion of this tort, we decline to expand it in the manner proposed here by plaintiff. The policy considerations that motivated this court to recognize a retaliatory discharge cause of action are adequately vindicated by allowing a cause of action against employers.
>
> ….
>
> This emphasis on tempering the power *of the employer* is not surprising. Logically speaking, only "the employer" has the power to hire or fire an employee. Obviously, an agent or employee of the employer may carry out that function on the employer's behalf, but it is still the authority of *the employer* which is being exercised. If the discharge violated public policy, it is the employer who is rightly held liable for damages. The purpose underlying the recognition of retaliatory discharge actions is therefore fully served by allowing actions only against the employer.

*Id*. at 20-22 (citations omitted). *See also Morton v. Hartigan*, 145 Ill. App. 3d 417, 495 (Ill. App. 1986) (affirming dismissal of plaintiffs claims and noting that tort of retaliatory discharge should not be expanded to allow suit against individual supervisors); *Balla v. Gambro, Inc.*, 203 Ill. App. 3d 57 (Ill. App. 1990) (affirming dismissal of retaliatory discharge claim against individual defendant because "…an individual who personally participated in the tort is insulated from liability because he is not the employee's employer, merely the employer's agent"), *rev'd on other grounds*, 145 Ill. 2d 492 (Ill. 1991).

Federal courts applying Illinois law have recognized the Supreme Court's refusal to permit a claim of retaliatory discharge to be brought against an individual. *Rosas v. BB Holdings*

*Partnership*, 362 F. Supp. 2d 986 (S.D. Ill. 2005) (dismissing claim against supervisor because plaintiff could only bring retaliatory discharge claim against his former employer); *Thomas v. Guardsmark, Inc.*, 19 IER Cases 1061 (N.D. Ill. 2003) (dismissing claim against supervisor and recognizing that the Illinois Supreme Court had "refused to extend the tort of retaliatory discharge to include individual liability for supervisors who terminate employees").

Because well-established Illinois law does not allow a retaliatory discharge cause of action to proceed against anyone other than a plaintiff's former employer, Plaintiff's claim against his individual supervisor, Defendant Olney, fails and should be dismissed.

> **E.    Plaintiff's Retaliatory Discharge Claim Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) Because It Is Preempted By The Illinois Human Rights Act.**

Even if Plaintiff was not barred from asserting his retaliatory discharge claim against Olney, Plaintiff's retaliatory discharge claim would still fail as it is clearly preempted by the IHRA.  Illinois courts have strictly limited the public policy exception to at-will employment to cases where employees were fired for asserting their rights under the Worker's Compensation Act or for "whistle-blowing" activities. *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 743 (Ill. App. 2000).  *See also Palmateer v. International Harvester Co.*, 85 Ill. 2d 124 (Ill. App. 1981).  To the extent, Plaintiff claims that his retaliatory discharge claim includes "whistle-blowing" about Olney's "harassing" conduct, it is preempted by the IHRA.

The IHRA "divests courts of jurisdiction over civil rights violations other than as set forth in the Act."  775 ILCS 5/1-101, *et seq.*; *see also Talley v. Washington Inventory Serv.*, 37 F.3d 310, 312 (7th Cir. 1994).  The Illinois Supreme Court, as well as Illinois federal courts, has unambiguously interpreted the IHRA as preempting all state law claims that seek redress for a civil rights violation within the scope of the IHRA.  This preemption is part unduly clear for

claims alleging common law retaliatory discharge for engaging in activities protected by the IHRA. *See Mein v. Masonite Corp.*, 109 Ill. 2d 1 (Ill. 1985) (affirming dismissal of employee's common law retaliatory discharge action as preempted by the exclusive procedures of the IHRA); *see also Stoecklein v. Illinois Tool Works, Inc.*, 589 F. Supp. 139 (N.D. Ill. 1984) (dismissing an employee's common law retaliatory discharge action as preempted by the IHRA where he was discharged in retaliation for his refusal to accept a discriminatory demotion); *Hicks v. Resolution Trust Corp.*, 738 F. Supp. 279 (N.D. Ill. 1990) (finding that the plaintiff could not state a claim for retaliatory discharge where the IHRA provides a remedy for the type of retaliatory discharge alleged by the plaintiff); *Peters v. Fansteel, Inc.*, 736 F. Supp. 198 (N.D. Ill. 1990) (finding that the IHRA provides exclusive remedy for employees discharged because of discrimination); *Corluka v. Bridgeford Foods of Illinois, Inc.*, 284 Ill. App. 3d 190 (Ill. App. 1996) (finding that the IHRA provides exclusive remedy for retaliatory discharge for reporting harassment).

Here, Plaintiff alleges that he was terminated in retaliation for reporting Olney's "harassing conduct" and "in violation of the clearly mandated public policy of the State of Illinois requiring a safe and non-hostile working environment." To the extent that Plaintiff is claiming that the harassment and hostile working environment was a result of his membership in a protected class, Plaintiff's claim for retaliatory discharge is clearly preempted by the IHRA, which protects against harassment on the basis of "race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, military status, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." 775 ILCS 5/1-102(A).

\6451296.2

Plaintiff does not, and cannot, allege a public policy that has been violated by this alleged harassment that does not fall within the purview of the IHRA.

Because well-established Illinois law does not allow a retaliatory discharge cause of action to exist where the IHRA provides a remedy, Plaintiff cannot allege any set of facts that would entitle him to relief. For this additional reason, Plaintiff's retaliatory discharge claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed.


Dated:  August 11, 2008                              Respectfully submitted,

                                                     **DON OLNEY**


                                                     By:  s/ John J. Michels, Jr.
                                                          One of His Attorneys


John J. Michels, Jr.
Dionne R. Hayden
Jeannil Boji
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601
312.849.8100
312.849.3690 (facsimile)

\6451296.2

## <u>CERTIFICATE OF SERVICE</u>

I, John J. Michels, Jr., an attorney, hereby certify that on this 11th day of August, 2008, I

electronically filed the foregoing ***Defendant Don Olney's Memorandum of Law in Support of***

***His Motion to Dismiss Plaintiff's Complaint*** with the Clerk of Court using the ECF system.

Notification of this filing will be served on the following person through U.S. mail:

> Daniel S. Gradows
> 2239 West 35th Street
> Chicago, IL 60609
> *Counsel for Plaintiff*

> s/ John J. Michels, Jr.
> John J. Michels, Jr.

\6451296.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | |
|---|---|
| **THOMAS J. CARTER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 1:08-cv-4396 |
| | ) |
| **SIEMENS BUSINESS SERVICES,** | ) |
| **DEBRA BARRETT, BRUCE YORK** | )     Honorable Amy J. St. Eve |
| **and DON OLNEY,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>INDEX OF EXHIBITS</u>

Affidavit of Don Olney ...........................................................................................................A

*Solo Cup Co. v. First Southwest Vending and Food Serv.,* No. 07 C 4384, 2008
WL 2787442, *3 (N.D. Ill. July 17, 2008)................................................................................B

*Banc Corp. USA v. Perez,* No. 05 C 7307, 2006 WL 1594100 (N.D. Ill. June 5, 2006)............C

*Ojea v. Mazda Motor Corp., Inc.,* No. 07 C 3635, 2007 WL 3087122
(N.D. Ill. Oct. 18, 2007)...........................................................................................................D

*Oberth v. Kirth,* No. 06 C 2877, 2006 WL 3743712 (N.D. Ill. Dec. 13, 2006).........................E

\6451296.2

18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

THOMAS J. CARTER,            )
                             )
          Plaintiff,         )
                             )
v.                           )     Civil Action No. 1:08-cv-4396
                             )
SIEMENS BUSINESS SERVICES,   )
DEBRA BARRETT, BRUCE YORK    )     Honorable Amy J. St. Eve
and DON OLNEY,               )
                             )
          Defendants.        )
                             )

### AFFIDAVIT OF DON OLNEY

Don Olney, being duly sworn, deposes and states:

    1.    I am over eighteen years of age and competent to testify in a court of law. The statements made herein are based on my own personal knowledge. I would testify to these statements if I were called to do so in a court of law.

    2.    At all times relevant to this matter, both Thomas J. Carter and I worked for Siemens Business Services, Inc. ("SBS").

    3.    At all times relevant to this matter, I worked in SBS's Mason, Ohio office and Mr. Carter worked in SBS's Lake Zurich, Illinois Data Center.

    4.    On November 7, 2005, I became Mr. Carter's Acting Manager.

    5.    Prior to this date, Carter and I worked in a co-worker capacity.

    6.    With the exception of one business trip Carter made in March 2005 to SBS's Mason, Ohio office, all of my interactions and communications with Carter occurred via telephone and e-mail.



EXHIBIT
A

7.    These communications and interactions occurred as a result of my work duties and were initiated on behalf of SBS.

8.    I have never lived or maintained a residence in Illinois.

9.    I have never owned real property in Illinois, maintained an office in Illinois, or maintained a telephone number in Illinois.

10.    I have never voted or been liable for income taxes in Illinois.

11.    I have never held a job which was based in Illinois.

12.    On July 5, 2008, a Montgomery County, Ohio Sheriff delivered a copy of the Complaint and a Summons dated January 4, 2008 to my home in Centerville, Ohio.


I hereby affirm, subject to penalty for perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge.


_____
Don Olney

_8/10/2008_____
Date

Westlaw.

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**

Page 1

Solo Cup Co. v. First Southwest Vending and Food Service
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
SOLO CUP COMPANY, Plaintiff,
v.
FIRST SOUTHWEST VENDING AND FOOD SERVICE, Defendant.
**No. 07 C 4384.**

July 17, 2008.

Davi Lynn Hirsch, Klein, Dub & Holleb, Limited, Douglas M. Eveleigh, Solo Cup Company, Highland Park, IL, for Plaintiff.
Alfred W. Ellis, Sommerman & Quesada, LLP, Dallas, TX, Robert J. Bingle, Corboy & Demetrio, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

GERALDINE SOAT BROWN, United States Magistrate Judge.
*1 In this action plaintiff Solo Cup Company ("Solo") is suing defendant First Southwest Vending and Food Service ("Southwest") for breach of a cafeteria lease agreement, and is also seeking a related declaratory judgment. Southwest has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. ("Def.'s Mot.") [Dkt 12.] For the following reasons, Southwest's motion is granted. This action is dismissed without prejudice for lack of personal jurisdiction.

### PROCEDURAL BACKGROUND

Solo's Complaint alleges that it is a Delaware corporation with its principal place of business in Highland Park, Illinois, and that Southwest is an "entity existing under the laws of Texas" with a principal place of business in Trophy Club, Texas.

(Compl.¶¶ 1-2.) [Dkt 1.] FN1 The Complaint alleges breach of a cafeteria lease agreement dated May 14, 2004 ("Agreement") in which Southwest agreed to operate a cafeteria in Solo's Dallas manufacturing facility. (Compl.¶ 9, Ex. A.)

> FN1. Solo premises federal subject matter jurisdiction in this case on the diversity of the parties pursuant to 28 U.S.C. § 1332. (Compl.¶¶ 4, 5.) Solo's allegations as to Southwest's citizenship are limited to the following: "On information and belief, defendant First Southwest Vending and Food Service ... is an entity existing under the laws of Texas with a principal place of business at 1 Village Trail, Trophy Club, Texas, 76262."(Compl.¶ 2.) Southwest admits that allegation in its answer filed as part of and subject to its motion to dismiss. (Answer ¶ 1.02.) It is unclear from the pleadings whether Southwest is a corporation or some other "entity" that may require further allegations about citizenship. Because dismissal for lack of personal jurisdiction is warranted here, however, the court need not conclusively determine the existence of federal subject matter jurisdiction. *Sinochem International Co. Ltd., v. Malaysia International Shipping Corp.,* ---U.S. ----, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007) (stating that "a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction," citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).

Southwest filed the present motion including the affidavit of Gail Ross, the President of Southwest who signed the Agreement. (Def.'s Mot., Ex. A, Ross Aff. ¶ 1.) Solo took discovery on the motion, including Ms. Ross's deposition, and filed a response to the motion including declarations by Tom Pasqualini, Solo's Executive Vice-President for

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
tabbies
B

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**

Page 2

Supply Chain who signed the Agreement on behalf of Solo, and Marty Verville, the Human Resource Manager at Solo's Dallas facility. (Pl.'s Resp., Ex. A, Pasqualini Dec. ¶¶ 2, 4; Ex. B, Verville Dec. ¶ 2, 4.) [Dkt 32.] FN2 The parties consented to the jurisdiction of a Magistrate Judge. [Dkt 15.] The court heard argument by counsel on the motion. [Dkt 36.]

> FN2. Portions of Ms. Ross's deposition are attached as exhibits to both Solo's Response [dkt 32] and Southwest's Reply [dkt 33]. Although neither exhibit contains a complete transcript, this opinion refers to the excerpts collectively as the Ross deposition.

## FACTUAL BACKGROUND

In early 2004, Ms. Ross, Southwest's President, contacted Mr. Verville about submitting a quote for Southwest to operate vending machines at the Sweetheart Cup facility in Dallas, Texas. (Ross Dep. at 33.) Initially, Southwest's negotiations were with Sweetheart, but by the time the Agreement was signed, Ms. Ross was aware that the other party was Solo. (Ross Dep. at 35-36.) The record on the motion contains virtually no information about the relationship between Sweetheart and Solo, except a copy of the 2003 Texas Franchise Tax Report for Sweetheart Cup, identifying its principal place of business as Maryland, and documents from the Delaware and Texas Secretaries of State showing that in 2005, Sweetheart Cup Company, Inc., a Delaware corporation, changed the name under which it operates to "Solo Cup Operating Corporation." (Def.'s Reply, Ex. B.) However, it is undisputed that Southwest's negotiations began with Sweetheart Cup and ended in an agreement with Solo.

Ms. Ross and Mr. Verville conducted all of the negotiations over the proposed agreement, initially by telephone and then in Mr. Veville's office in Dallas, Texas. (Ross Dep. at 35; Ross Aff. ¶ 4.) Ms. Ross states that at no time during the negotiations did she have any contact or communication with anyone at

Solo in Illinois. (Ross Aff. ¶ 4.) Solo presents no evidence to the contrary.

*2 Southwest's attorney drew up a draft lease agreement, which Southwest provided to Solo. (Ross Dep. at 34-35.) Ms. Ross testified that she executed the Agreement on behalf of Southwest in May 2004, in Solo's office in Dallas, Texas. (*Id.* at 33-37.)At the time she signed it, it was already signed on behalf of Solo. (*Id.* at 36.)Mr. Verville made a copy of the signed Agreement, which he gave to her. (*Id.* at 37-38.)Mr. Verville's affidavit has a slightly different story. He states that on or around May 14, 2004, he received a copy of Agreement signed by Mr. Pasqualini on behalf of Solo, and that someone picked up a copy for Southwest at Ms. Ross's request. (Verville Dec. ¶¶ 3, 4.) Mr. Verville denies that Ms. Ross signed the Agreement on Solo's property. (*Id.* ¶ 5.) There is no suggestion, however, that Ms. Ross or anyone else on behalf of Southwest traveled to Illinois to negotiate or execute the Agreement. Mr. Pasqualini states that he executed the Agreement at Solo's headquarters in Illinois. (Pasqualini Dec. ¶ 4.) Mr. Pasqualini does not state that the Agreement was signed on behalf of Southwest when he received it. The Agreement attached to Solo's Complaint has a signature on behalf of Solo, but it is not signed on behalf of Southwest. (Compl., Ex. A.)

Under the Agreement, Southwest was to finish, furnish and operate a cafeteria in Solo's Dallas facility, as well as have the exclusive right to place vending machines in that facility. (Agreement ¶¶ 3,12.) Southwest would not pay rent or other monetary consideration for the lease, but would provide Solo's employees with coffee and one free meal for every ten purchased. (*Id.* ¶ 2.) Southwest would also pay Solo 15% of the net profits from vending machines in the facility. (*Id.* ¶ 12.)The Solo plant controller was to meet with a Southwest representative "monthly to review an accounting or financial statement for the purpose of confirming the amount of net profits from the vending machines."(*Id.* ¶ 12.)Mr. Verville states that if Southwest had paid

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**

Page 3

royalties "due under the Agreement," Southwest would have been directed to send payments to Solo's corporate headquarters in Illinois for deposit in Solo's bank account in Illinois. (Verville Dec. ¶ 6.) The Agreement, however, is silent as to where any vending machine payments were to be made or sent. Southwest never made any payments to Solo. (Ross Dep. at 55.)

The Agreement provides for the application of Texas law (Agreement ¶ 26), and contains a clause stating that the Agreement embodies the "entire agreement between the parties" and "supersedes all prior agreements and understandings ...."(*Id.* ¶ 22.)

All equipment for the cafeteria was purchased in Texas. (Ross Dep. at 54-55.) All of Southwest's communications and meetings with Solo prior to execution of the Agreement took place in Texas. (Ross Aff. at ¶ 4.)

Claiming that Southwest breached various provisions of the Agreement, Solo sent Southwest a notice of default in March 2006. (Compl.¶ 22.) [FN3]Southwest's attorney responded by letter dated April 6, 2006, directed to both Mr. Verville in Dallas and to Barry White, Solo's Vice President of Human Resources in Highland Park, Illinois. (Pf.'s Resp., Ex. F.) Solo terminated the Agreement in June 2006, and in August 2007 filed this lawsuit in the U.S. District Court for the Northern District of Illinois on the basis of diversity jurisdiction. (Compl.¶ 24.)

> FN3. The record does not include a copy of Solo's notice of default.

*3 Asserting that it is a nonresident defendant with insufficient ties to Illinois, Southwest challenges the personal jurisdiction of this court pursuant to Fed.R.Civ.P. 12(b)(2). (Def.'s Mot. at 2.) Solo argues that Southwest's activities fall within the Illinois long-arm statute, and that the exercise of specific jurisdiction over Southwest comports with both federal and Illinois due process.

## DISCUSSION

### A. Rule 12(b)(2)

Rule 12(b)(2) permits a court to dismiss a complaint for "lack of personal jurisdiction." To successfully oppose a Rule 12(b)(2) motion, a plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the nonresident defendant. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). The nature of the plaintiff's burden depends on whether the court determines that an evidentiary hearing is necessary. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir.2003). The court may review affidavits submitted by the parties, without an evidentiary hearing, to determine if the plaintiff has made out a prima facie showing of personal jurisdiction. *Id.* At that preliminary stage, the plaintiff is entitled to resolution of all relevant disputed facts in its favor. *Id.* If, however, any material facts are disputed, the court must hold an evidentiary hearing to resolve those facts. *Hyatt Intl. Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002).

In this case, there are no material facts in dispute. As discussed below, the only factual disputes the parties have identified relate to whether Southwest executed the Agreement at Solo's Dallas facility or some other location in Texas, and when Southwest executed the Agreement. Those disputes are not material to the motion, and no evidentiary hearing is necessary.

### B. Personal Jurisdiction

In cases where federal jurisdiction is based on diversity of citizenship, a federal court in Illinois may exercise personal jurisdiction over a nonresident defendant only to the extent an Illinois court would have jurisdiction.*Heritage House Rests., Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 279 (7th Cir.1990). To determine whether personal jurisdiction exists, Illinois courts must consider whether the assertion of jurisdiction comports with

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Illinois' long-arm statute, the due process provision of the United States Constitution and the constraints imposed by the Illinois Constitution's due process provision. *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1314 (Ill.1990).

Solo does not assert that Southwest has the continuous and systematic contacts with Illinois that would give rise to general jurisdiction in Illinois. (Pl.'s Resp. at 5 n. 1.) Rather, Solo asserts that there is specific jurisdiction, "a more limited assertion of state power, in which personal jurisdiction exists for controversies that arise out of or are related to the defendant's forum contacts."*Hyatt Intl.,* 302 F.3d at 713 (citing *Steel Warehouse of Wisc., Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1988).

*4 Under Illinois' long-arm statute, nonresident defendants are subject to personal jurisdiction here if the cause of action arose from or relates to their activities within the state, including "[t]he making or performing of any contract or promise substantially connected with this State."735 Ill. Comp. Stat. § 5/2-209(a)(7). Illinois' long-arm statute also contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."735 Ill. Comp. Stat. § 5/2-209(c). Although the United States and Illinois Constitutions do not contain identical due process guarantees, the Seventh Circuit has suggested that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction."*Hyatt Intl.,* 302 F.3d at 715 (citing *RAR,* 107 F.3d at 1276). Thus, the standard is the limit imposed by the due process guarantee of the Fourteenth Amendment, that is, the federal due process inquiry. *See Hyatt Intl.,* 302 F.3d at 714.

To satisfy federal due process, the defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."*Intl. Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted). Those minimum contacts must be sufficient to create a "substantial connection" between the defendant and the forum state. *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)."Crucial to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court [in the forum State] ... because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there."*RAR,* 107 F.3d at 1277. The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). Unilateral activity on the part of the plaintiff is not sufficient to support a finding of minimum contacts. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

If the defendant is found to have established minimum contacts with the forum state, the court then evaluates whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Purdue,* 338 F.3d at 781 (quoting *Intl. Shoe,* 326 U.S. at 320). In that analysis, the court considers several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."*Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (internal quotations omitted).

*5 Southwest's motion is evaluated in light of those standards.

**1. Southwest's Contacts with Illinois**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**

Solo argues that this court has specific jurisdiction over its breach of contract claim against Southwest. Although a contractual relationship can sometimes establish specific jurisdiction, "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts."*RAR,* 107 F.3d 1277 (citing *Burger King,* 471 U.S. at 478)."Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant."*Id.* (quoting *Burger King,* 471 U.S. at 479).

Accordingly, to determine whether the contractual relationship between Southwest and Solo is sufficient to establish personal jurisdiction, several factors must be considered: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place. *Viktron Ltd. Partn. v. Program Data, Inc.,* 326 Ill.App.3d 111, 259 Ill.Dec. 706, 759 N.E.2d 186, 193-194 (Ill.App.2001). Furthermore, "[a] fourth factor, where the contract was negotiated ... is clearly relevant."*Id.*[FN4]

> FN4. In *Viktron,* the court enumerated these factors when evaluating whether the contract at issue was substantially connected with Illinois sufficient to confer personal jurisdiction under Illinois' long-arm statute. 259 Ill.Dec. 706, 759 N.E.2d at 193-194. Courts in Illinois and in this district have routinely applied these factors in evaluating whether a court could exercise jurisdiction under Illinois' long-arm statute. *See e.g. Crum & Forster Specialty Ins. Co. v. Extended Stay America, Inc.,* 375 Ill.App.3d 654, 314 Ill.Dec. 34, 873 N.E.2d 964, 970 (Ill.App.2007); *Bolger v. Nautica Intl., Inc.,* 369 Ill.App.3d 947, 308 Ill.Dec. 335, 861 N.E.2d 666, 671 (Ill.App.2007); *BAB Systs., Inc. v. UNK, Inc.,* 2002 WL 31867705 *2 (N.D. Ill. Dec

20, 2002) (Coar, J); *Promero, Inc. v. Mammen,* 2002 WL 31455970 *4 (N.D.Ill.2002) (Guzman, J.). Although formulated within the framework of Illinois' long-arm statute, these factors are helpful in analyzing whether the parties' contractual relationship and course of dealings are sufficient to establish the requisite minimum contacts under federal due process. *See e.g. Citadel Group Ltd. v. Wash. Regl. Med. Ctr.,* 2007 WL 1772262 *3 (N.D.Ill. June 18, 2007) (Aspen, J.); *Lakeview Tech. v. Vision Solutions,* 2007 WL 79246 * 7 (N.D.Ill. Jan.9, 2007) (Aspen, J.).

Here, it is undisputed that when Southwest initiated negotiations, it did so with the Sweetheart Cup Company, a Delaware corporation. After some unspecified period of time Southwest learned that Solo had in some fashion replaced the Sweetheart Cup Company and that Solo would be the contracting party. The negotiations proceeded entirely in Texas even after Solo became involved-a point Solo effectively concedes. If a defendant solicits an agreement through contact with the plaintiff in the forum state, that is a factor favoring jurisdiction. *See Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1203-1204 (7th Cir.1985). But that is not the case here. At no time did any Southwest representative travel to Illinois or have any contact or communication with any representatives of Solo in Illinois during the negotiation of the Agreement. It cannot be said that Southwest purposefully approached an Illinois corporation, or that upon learning of Solo's involvement in the transaction, directed its discussions to Illinois or any Solo representative in Illinois. *See e.g. Smith Wilson Co., Inc. v. Metro Airlines, Inc.,* 1987 WL 26114 * 4 (N.D.Ill. Nov.30, 1987) (Plunkett, J.) (no personal jurisdiction in Illinois where defendant learned that plaintiff was an Illinois entity only after defendant submitted its bid).

As for execution of the Agreement, it is undisputed

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**

Page 6

that Ms. Ross signed the Agreement on behalf of Southwest in Texas, not Illinois. While the parties dispute when Ms. Ross signed the Agreement, whether the copy she signed had already been signed by a Solo representative, and whether she signed the Agreement at Solo's Dallas facility or some other location in Texas, these issues of fact are not material to the motion. That Mr. Pasqualini executed the Agreement on behalf of Solo in Illinois is also insignificant. The defendant's actions, not the plaintiff's, determine jurisdiction. *See Asset Allocation & Mgt. Co., v. Western Employees Ins. Co.,* 892 F.2d 566, 569 (7th Cir.1989) (stating that "[t]he question is whether [the defendant] was transacting business in Illinois, not whether [the plaintiff], the Illinois resident, was").

*6 Performance of the Agreement also took place in Texas. The facility that is the subject of the lease arrangement is located in Dallas, Texas. Southwest was obligated under the Agreement to finish, furnish and maintain a cafeteria space as well as stock and maintain vending machines at the Dallas facility. Equipment for the cafeteria was purchased in Texas, and all personnel were located in Dallas. Southwest's communications with Solo during the term of the Agreement were conducted with Solo representatives in Texas. Finally, the alleged breach of the Agreement-Southwest's alleged failure to provide a first class, professional cafeteria-necessarily took place at the leased premises in Dallas. (Compl.¶ 12.)

While conceding that part of the Agreement was to be performed in Texas, Solo argues that part was also to be performed in Illinois. (Pl.'s Resp. at 7.) According to Solo, had Southwest complied with its obligation to pay Solo 15% of vending machine revenues, Southwest would have been directed to send payments to Solo's headquarters in Illinois, and Solo would have deposited those payments into Solo Cup's Illinois bank account. (*Id.* at 7.) Nothing in the Agreement, however, directs Southwest to mail any payments to Solo's Illinois headquarters. The Agreement merely states that Solo's

"representative (Plant Controller)" is to meet with a Southwest representative on a monthly basis to review an accounting or financial statement for the purpose of confirming the amount of net profits from the vending machines. (Agreement ¶ 12.) The only reasonable construction of the phrase "plant controller" is as a reference to Solo's Dallas facility where the cafeteria was located. Nothing in the Agreement even requires that notices be sent to Solo in Illinois. Notices are to be provided "to the party's last known address."(Agreement ¶ 17.) In fact, the word "Illinois" does not appear in the Agreement.

Solo also argues that Southwest's attorney's letter in response to Solo's March 2007 notice of default, which was sent to Solo's Vice President of Human Resources in Illinois as well as to Mr. Verville in Texas, establishes that Southwest understood Solo's Illinois headquarters was the "appropriate locale to address and resolve ... Southwest's performance issues and other potential contract interpretation issues."(Pl.'s Resp. at 7, referring to Ex. F.) Solo has not cited any legal authority for the proposition that sending a copy of a response to a notice of default to Illinois subjects the sender to personal jurisdiction in Illinois, and the court is not aware of any. An attorney's response to a default letter hardly constitutes activity by which Southwest "purposefully availed itself of the privilege of conducting activities within the forum state."*Purdue Research,* 338 F.3d at 780 (citing *Burger King,* 471 U.S. at 475, and *Hanson v. Denckla,* 357 U.S. 235 at 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Asset Allocation,* 892 F.2d at 570 (nonresident defendant's mailing of checks in payment of contract and letters of complaint directed to plaintiff in Illinois were insufficient to confer jurisdiction, and stating that "[i]f those dealings are enough to confer jurisdiction, the long-arm statute reaches every contract with an Illinois resident").

*7 In addition to the foregoing, the parties' choice of law provision contained in the Agreement factors into the analysis. While alone insufficient to confer

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

jurisdiction, the choice of law provision is a relevant consideration in establishing jurisdiction. *Estate of Isringhausen v. Prime Contractors and Assocs., Inc.,* 378 Ill.App.3d 1059, 318 Ill.Dec. 363, 883 N.E.2d 594, 601 (Ill.App.2008) (stating that "[p]resumably, the choice-oflaw provision is relevant because foreseeability on the defendant's part is central to the determination of whether personal jurisdiction would be reasonable and fair under the circumstances"). That the parties selected Texas law to govern the Agreement weighs against finding jurisdiction in Illinois.

These facts demonstrate that Southwest did not have the requisite minimum contacts nor has it created a substantial connection with Illinois "such that the maintenance of the suit [would] not offend traditional notions of fair play and substantial justice."*Intl. Shoe Co.,* 326 U.S. at 316 (internal quotations omitted). Solo has failed to demonstrate that Southwest "purposefully avail[ed] itself of the privilege of conducting activities" in Illinois so that it could reasonably anticipate being haled into court here.*Steel Warehouse,* 154 F.3d at 714.

**2. Fairness**

Additionally, the exercise of jurisdiction by a court in Illinois would not comport with "fair play and substantial justice." *Purdue,* 338 F.3d at 781 (quoting *Intl. Shoe,* 3 26 U.S. at 320). T he burden on Southwest of proceeding with litigation in Illinois is substantial. The subject of this lawsuit- the leased premises-is located in Texas, all of Southwest's employees and potential witnesses are in Texas, and presumably all of Southwest's documents relevant to this lawsuit are located in Texas.

Solo counters that not all witnesses are located in Texas, and *its* documents are at Solo Cup's headquarters in Highland Park, Illinois. The only witness Solo identifies in Illinois, however, is Mr. Pasqualini, and his involvement in the dispute is limited to Solo's execution of the Agreement. (Pasqualini Dec. ¶ 4.) He was not even involved in the negotiation, and, as far as this record discloses, has no evidence on the central issue: whether the Agreement was breached. Solo further argues that requiring Southwest to appear in Illinois is not unduly oppressive or burdensome because Southwest has retained local counsel and modern developments and advancements in technology make it reasonable for parties to litigate in a foreign forum. (Pl.'s Resp. at 8.) But Solo could presumably just as readily retain local counsel and employ modern technology to litigate this lawsuit in Texas.[FN5]

> FN5. In October 2007, shortly after the filing of this lawsuit, Southwest filed a parallel lawsuit against Solo in Texas state court alleging, *inter alia,* breach of the Agreement. Solo removed the lawsuit to the U.S. District Court for the Northern District of Texas on the basis of diversity jurisdiction, where the action has been stayed pending this court's ruling on Southwest's motion to dismiss. *First Southwest Vending and Food Serv. v. Solo Cup Co.,* 2008 WL 1757822 * 6 (N.D.Tex. Apr.9, 2008) (Fitzwater, C.J.).

The negotiation, execution, performance and alleged breach of the Agreement occurred outside of Illinois, and this state has no interest in adjudicating the dispute, which will be governed by Texas law. It would be neither convenient nor efficient to resolve the parties' dispute in this forum.

**CONCLUSION**

*8 For the foregoing reasons, Southwest's motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction is granted, and this case is hereby dismissed without prejudice.

**IT IS SO ORDERED.**

N.D.Ill.,2008.
Solo Cup Co. v. First Southwest Vending and Food Service

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2787442 (N.D.Ill.)
**2008 WL 2787442 (N.D.Ill.)**


Slip Copy, 2008 WL 2787442 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

C
Banc Corp USA v. Perez
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
BANC CORP USA, Plaintiff,
v.
Dibe PEREZ, Defendant.
**No. 05 C 7307.**

June 5, 2006.

Bruce Craig Spitzer, Christopher A. Kreid, Metge,
Spitzer & Kreid, Chicago, IL, Kurt E. Vragel, Jr.,
Kurt E. Vragel, Jr., P.C., Glenview, IL, for Plaintiff.
Carri Ann Conlon, David Seth Argentar, Chuhak &
Tecson, P.C., Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

FILIP, J.
**\*1** Plaintiff, Banc Corp USA ("Banc Corp" or
"Plaintiff"), filed suit in the Circuit Court of Lake
County, Illinois on November 1, 2005, alleging vi-
olations of the Illinois Deceptive Practices Act, 720
ILCS 5/17-1 (2005), against Defendant, Ms. Dibe
Perez ("Ms. Perez" or "Defendant"). Subsequently,
Defendant removed the case to federal court.
(D.E.1.) FN1 Ms. Perez has moved to dismiss the
complaint pursuant to Federal Rules of Civil Pro-
cedure 12(b)(2) and 12(b)(6). (D.E.9.) For the two
adequate and independent reasons stated below-one
of which is a lack of personal jurisdiction over De-
fendant-Ms. Perez's motion is granted and the case
is dismissed without prejudice.

FN1. The various docket entries in this
case are designated "D.E. ____."

BACKGROUND FN2

FN2. The following facts are taken from
the Complaint (D.E.1, Ex. A) and from
Ms. Perez's affidavit. (D.E.9-3.) For
present purposes, the Court accepts the al-
legations in the Complaint as true, as pre-
cedent instructs. *See, e.g., Singer v. Pierce
& Assocs., P.C.,* 383 F.3d 596, 597 (7th
Cir.2004). In addition, in assessing the pro-
priety of personal jurisdiction, the Court
accepts as true those facts in Ms. Perez's
affidavit that are not refuted by Banc Corp.
*Accord, e.g., RAR, Inc. v. Turner Diesel,
Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997).

Plaintiff is an Illinois corporation with its primary
place of business in Glenview, Illinois. (D.E. 1, Ex.
A ("Complaint") at 1.) Defendant is an individual
and a resident of the State of New York. (*Id.*) At
the time of the incidents in question, Defendant was
employed as Director of Operations by the New
York law office of Fischbein, Badillo, Wagner &
Harding, LLP ("Fischbein"). (D.E. 9-3 (Defendant's
affidavit ("Def's Aff.").) Ms. Perez avers, and Banc
Corp does not dispute, that Perez was never a part-
ner or officer of Fischbein. (*Id.*) As part of her em-
ployment, Ms. Perez "pa[id] invoices using checks
drawn upon [Fischbein's] bank accounts."(*Id.*)

On or about June 9, 2005, Ms. Perez gave Plaintiff
a check that she had signed, numbered 84652
("Check 84652"), in the amount of $37,430.26.
(Complaint at 1.) Check 84652 was drawn on Fisc-
hbein's account at Commerce Bank in New York,
New York. (*Id.: see also id.* at 4 (copy of Check
84652).) When Check 84652 was presented to
Commerce Bank, it was returned unpaid with the
notation "DO NOT REDEPOSIT." (*Id.* at 1.) Sub-
sequently, on or about June 23, 2005, Banc Corp al-
leges that Ms. Perez gave Banc Corp another check
drawn on Fischbein's account, numbered 84688
("Check 84688"), for $37,430.26. (*Id.*) When
Check 84688 was presented to Commerce Bank in
New York, New York, it was also returned unpaid,
this time with the notation "REFER TO MAKER."
(*Id.* at 1-2.)On September 1, 2005, Banc Corp sent

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT**

C

Slip Copy
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

Page 2

a demand letter to Ms. Perez for payment of the check. (*Id.* at 2.) There is no record that Banc Corp ever received payment.

In her affidavit, Ms. Perez offers unrefuted testimony that the two checks at issue were issued on behalf of Fischbein to pay Plaintiff's invoices to Fischbein. (Def's Aff.) Ms. Perez avers without contradiction that she "has never issued a personal check in Illinois."(*Id.*) Ms. Perez further avers without contradiction that she has never resided or knowingly transacted business in Illinois and owns no property in the state. (*Id.*)

Banc Corp brings this case under the Illinois Deceptive Practices Act, 720 ILCS 517-1(a), and it requests damages in the amount of $77,860.52 plus additional fees and costs.[FN3](Complaint at 2.) Ms. Perez moves for dismissal of the Complaint under Fed.R.Civ.P. 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted, respectively. (D.E.9-1.) As explained below, Ms. Perez's motion is granted.

> FN3. Under the Illinois Deceptive Practices Act, a defendant who violates the Act by issuing a check and subsequently failing to pay the amount of the check may be required to pay damages of treble the amount owed, but no more than $1,500 over the amount owed for each check, plus attorneys fees and costs. *See* 720 ILCS 5/17-1(a).

## JURISDICTION AND CHOICE OF LAW

**\*2** Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over the instant case because complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs. The parties frame their arguments under Illinois law, and so the Court applies Illinois law. *Accord, e.g., Harter v. Iowa Grain Co.,* 220 F.3d 544, 559 n. 13 (7th Cir.2000) (citation

omitted).

## LEGAL STANDARDS

In moving to dismiss claims under Rule 12(b)(2), "the plaintiff bears the burden of proving that personal jurisdiction exists."*Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir.2000) (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997)); *accord, e.g., Jones v. Sabis Educ. Sys., Inc.,* 52 F.Supp.2d 868, 883 (N.D.Ill.1999) (Gettleman, J.) (citation omitted). When analyzing personal jurisdiction, the court may consider affidavits submitted by the parties. *See, e.g., RAR, Inc.,* 107 F.3d at 1275 (citation omitted); *Zurich Capital Mkts. v. Coglianese,* 388 F.Supp.2d 847, 855 (N.D.Ill.2004) (St.Eve, J.) (citation omitted)."Any conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs."*Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 904 n. 3 & 905 (N.D.Ill.2003) (Alesia, J.) (collecting cases); *accord, e.g., RAR, Inc.,* 107 F.3d at 1275.

On a motion under Rule 12(b)(6), a party "challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted."*Johnson v. Rivera,* 272 F.3d 519, 520-21 (7th Cir.2001). A court ruling on a motion to dismiss must examine the case in the light most favorable to the plaintiff, accepting as true all facts alleged in the complaint. *See, e.g., Singer v. Pierce & Assocs., P.C.,* 383 F.3d 596, 597 (7th Cir.2004). Ordinarily, mere notice pleading standards apply, under which dismissal for failure to state a claim is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir.2003). In this case, however, the heightened pleading standard of Fed.R.Civ.P. 9(b) applies, because Banc

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

Corp's claim under the Illinois Deceptive Practices Act sounds in fraud. "[C]laims which sound in fraud, as Plaintiff's claim does, must be pled with particularity."*Ivanhoe Fin., Inc. v. Highland Banc Corp.,* No. 03 C 7336, 2005 WL 1498878, at *3 (N.D.Ill. June 9, 2005) (Darrah, J.) (internal quotation marks and citation omitted); *accord, e.g.,*Fed.R.Civ.P. 9(b) (stating that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 470 (7th Cir.1999) (similar; citation omitted).

## DISCUSSION

### I. Plaintiff Has Failed To Prove That Personal Jurisdiction Exists Over Ms. Perez

*3 The sole basis Plaintiff provides for personal jurisdiction over Defendant is that "Perez transacted business in this county [in Illinois] by writing a bad check to Banc Corp. which was received and deposited in this state."(Complaint at 1.) Ms. Perez counters that "her performance of [writing the checks] in New York on behalf of her employer" and sending the checks to Illinois for deposit is insufficient for this Court to assert personal jurisdiction over her. (D.E. 9-2 at 1.) The Court agrees with Ms. Perez.

The Seventh Circuit has taught that "[a] district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction."*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 779 (7th Cir.2003); *accord, e.g., RAR, Inc.,* 107 F.3d at 1275 ("A federal district court exercising diversity jurisdiction has personal jurisdiction, of course, only if a court of the state in which it sits would have jurisdiction.") (citation omitted). Because the Illinois statutory and constitutional inquiries essentially collapse into the Illinois constitutional inquiry, the Court need only

consider whether an assertion of personal jurisdiction over Ms. Perez would comport with state and federal constitutional standards. *See RAR, Inc.,* 107 F.3d at 1276 (under Illinois law analysis applicable for federal district court sitting in diversity, the personal jurisdiction inquiry "collapse[s] into two constitutional inquiries-one state and one federal."). The Court need not consider whether an assertion of jurisdiction here would violate the Due Process Clause of the Fourteenth Amendment, because, as Ms. Perez argues, it is clear that an assertion of jurisdiction over her does not comport with fundamental jurisprudential tenets regarding personal jurisdictional under Illinois law. *See, e.g., Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1314 (Ill.1990) (adopting the fiduciary shield doctrine as a principle of Illinois constitutional law concerning personal jurisdiction, "[t]he effect [of which] is to limit the jurisdictional power of the Illinois courts."); *see also Glass v. Kemper Corp.,* 930 F.Supp. 332, 338 (N.D.Ill.1996) (Alesia, J.) (dismissing defendant under principles of Illinois fiduciary shield doctrine and stating, "the court must take into consideration both federal and Illinois due process to determine whether jurisdiction is proper. If jurisdiction is improper under either federal or Illinois due process, this court cannot exercise jurisdiction over the defendant.").

Personal jurisdiction can be found in either of two forms, general or specific. Plaintiff does not allege that Defendant had the type of "substantial, continuous and systematic" contacts with Illinois that would give rise to general jurisdiction. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.,* 208 F.Supp.2d 918, 922 (N.D.Ill.2002) (Gettleman, J.) (internal quotation marks and citation omitted). The Court accordingly finds that Banc Corp has waived any general jurisdiction arguments. *Accord RAR, Inc.,* 107 F.3d at 1277 (finding waiver and focusing "exclusively on specific jurisdiction" where the plaintiff did not allege general jurisdictional contacts). (Any claim of general jurisdiction over Ms. Perez also does not appear to be colorable in any event.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

*4 Specific personal jurisdiction in Illinois may be exercised over a non-resident defendant consistent with due process if two conditions are satisfied. First, the defendant must have "minimum contacts" with Illinois, by which the defendant has purposely availed itself of "the privilege of conducting activities within ... [Illinois], thus invoking the benefits and protections of its laws."*Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ( internal quotation marks and citation omitted). In this regard, the defendant itself, rather than the plaintiff or a third party, must create the contacts. *See, e.g., Purdue Research,* 338 F.3d at 780 (collecting authorities)."This requirement ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue."*Id.,* 338 F.3d at 780 (citation omitted). Moreover, where a plaintiff asserts that the court has specific personal jurisdiction over a non-resident defendant, the cause of action asserted by the plaintiff must "arise out of" or be "related to" the contacts that occurred in Illinois. *See, e.g., RAR, Inc.,* 107 F.3d at 1277 (citation omitted). Second, even if minimum contacts are found, compelling the defendant to litigate in Illinois also must not offend "traditional notions of fair play and substantial justice."*Asahi,* 480 U.S. at 113.

Ms. Perez argues that the Court lacks personal jurisdiction over her based on the applicability of the "fiduciary shield doctrine" that is part of Illinois constitutional jurisprudence. (D.E. 9 at 1.) She is correct.

In *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (Ill.1990), the Illinois Supreme Court adopted the fiduciary shield doctrine as part of Illinois personal jurisdiction law. *Id.* at 1313-14.The fiduciary shield doctrine "precludes courts from exercising jurisdiction over a non-resident corporate official, when the only contacts that individual has with Illinois are made in his or her corporate capacity."*Zurich Capital Mkts., Inc.,*

388 F.Supp.2d at 859-60 (citing *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994)); *accord, e.g., Rice,* 38 F.3d at 912 (explaining that the "fiduciary shield doctrine," "recognized by the courts of many states including Illinois ... denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal.") (collecting cases; internal citations omitted).

The Illinois Supreme Court's decision in *Rollins* to limit the jurisdictional power of the Illinois courts rested on its reasoning that it would be "unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal."*Id.,* 152 Ill.Dec. 384, 565 N.E.2d at 1318;*accord, e.g., Jones.,* 52 F.Supp.2d at 883 (quoting *Rice,* 38 F.3d at 912). Courts have subsequently identified limitations for when a defendant may use the fiduciary shield doctrine to prevent the exercise of personal jurisdiction:

*5 First, the fiduciary shield doctrine is discretionary or equitable, rather than an absolute entitlement, and should be applied only where equity demands it. Second, the doctrine will be removed if the defendant was acting also, or instead, to serve his own personal interests. Third, the discretion exercised by the individual is a factor that a court should consider when determining whether the fiduciary shield doctrine applies to a case.

*Interlease,* 262 F.Supp.2d at 912 (collecting cases; internal quotation marks and citations omitted); *accord, e.g., Rice,* 38 F.3d at 912 (discussing the equitable and "personal interest" limitations on the doctrine). As explained below, none of these limitations renders the fiduciary shield doctrine inapplicable in the instant case with respect to Ms. Perez.

Ms. Perez's affidavit asserts that she issued Check

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

84652 and Check 84688 to Plaintiff on behalf of her employer, Fischbein (Def's Aff.); specifically, she testifies that "[t]he checks were drawn on Fischbein's account to pay for a Fischbein lease obligation."(D.E. 9-2 at 3.) Banc Corp has not contested these averments. As explained further below. Ms. Perez meets the requirements concerning the fiduciary shield doctrine because the allegedly tortious acts and the business transactions that she participated in were performed on behalf of her employer. *See, e.g., Glass,* 930 F.Supp. at 342 ("Because most of Oberst's [defendant's] conduct in Illinois 'was a product of, and was motivated by, his employment situation and not his personal interests, ... it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." ') (quoting *Rollins,* 152 Ill.Dec. 384, 565 N.E.2d at 1318) (ellipses in *Glass* ).

Banc Corp does not allege that by issuing the checks, Ms. Perez was acting to "serve [her] personal interests." *Rollins,* 152 Ill.Dec. 384, 565 N.E.2d at 1318;*accord, e.g., Jones,* 52 F.Supp.2d at 884 (finding that fiduciary shield applied where the allegations in the complaint and the affidavit suggested that the defendant general counsel "was merely carrying out [his employer's] order" in taking the actions that would have subjected him to personal jurisdiction). Nor does Plaintiff allege that Defendant had discretion and "cho[se] to commit the acts that subject[ed][her] to long-arm jurisdiction."*Id., 52* F.Supp.2d at 884 (concluding that the "discretion" factor supported application of the fiduciary shield where "[p]laintiff alleges nothing to suggest that [defendant] had any discretion whether or not to execute [his employer's] directive.") (collecting cases). Finally, the equities weigh heavily against an assertion of personal jurisdiction; as the Illinois Supreme Court held in *Rollins,* an employee in Ms. Perez's position, that is, an employee in a non-executive role, often "has little or no alternative besides unemployment when ordered to ... [have contacts with another state] to carry out the wishes of ... [her] employer."*Id.,* 152 Ill.Dec. 384, 565 N.E.2d at 1318. Thus, the Court finds that the

fiduciary shield doctrine of Illinois law bars an assertion of personal jurisdiction over Ms. Perez in this diversity suit for her issuance of the two checks on behalf of Fischbein.

**\*6** Banc Corp argues that liability may be imposed upon an individual who issues a check, even when that individual is acting only as a corporate agent, officer, or employee. (D.E. 16 at 1.) In this regard, Banc Corp cites two cases for the proffered principle that fraudulent or tortious actions taken solely in one's corporate capacity may nonetheless be grounds for the imposition of personal liability under 720 ILCS 5/17-1.[FN4](*See id.* a t 1, 152 Ill.Dec. 384, 565 N.E.2d 1302 (citing *Veteran Supply Co. v. Swaw,* 192 Ill.App.3d 286, 139 Ill.Dec. 282, 548 N.E.2d 667 (Ill.App.Ct.1989); *In re Philopulos,* 313 B.R. 271 (Bankr.N.D.Ill.2004).) Assuming *arguendo* that Plaintiff has correctly stated Illinois law on this issue, the Court respectfully finds that this argument does not alter the personal jurisdiction analysis for the reasons explained below.

> FN4. In addition, Plaintiff cites *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), for the proposition that the fiduciary shield doctrine is inapplicable in the present matter. (D.E. 16 at 2.) However, the Supreme Court in *Calder* applied California law in analyzing the jurisdictional question. *See id.,* 465 U.S. at 786 n. 5. Unlike the case in Illinois, at the time *Calder* was decided (and through the present day) California did not recognize the fiduciary shield doctrine. *See, e.g., Taylor-Rush v. Multitech Corp.,* 217 Cal.App.3d 103, 118, 265 Cal.Rptr. 672 (Cal.App.Ct.1990) (discussing with approval the result in *Calder* and stating that "[w]e are in agreement with those courts that have concluded that an unreasonable and anomalous result would occur if a nonresident individual, acting in his capacity as corporate officer or director, committed a tort for which he may be personally li-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

able and could shield himself from jurisdiction when he could not interpose the same shield as a defense to substantive liability."). In *Rollins v . Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (Ill.1990), the seminal case concerning the fiduciary shield doctrine under Illinois law, the Illinois Supreme Court specifically discussed *Calder.* While the Illinois Supreme Court acknowledged that *Calder* might allow the State of Illinois to assert personal jurisdiction in at least some instances where it would not be permitted under the Illinois fiduciary shield doctrine, the Illinois Supreme Court held that "the scope of [the] Illinois ... due process clause is more restricted, precluding such an exercise of jurisdiction over nonresident employees." *Rollins,* 152 Ill.Dec. 384, 565 N.E.2d at 1315. Put differently, while *Calder* may well allow a constitutionally valid assertion of personal jurisdiction under the Fourteenth Amendment Due Process Clause in some or perhaps many instances where the Illinois fiduciary shield doctrine would preclude it, Illinois constitutional law is more restrictive and does not accept the latitude *Calder* affords. Banc Corp cites no authority that even suggests that Illinois is required to accept the latitude afforded by *Calder* when interpreting the Illinois Constitution, and substantial authority establishes that this Court must, when sitting in diversity, respect the limits the State of Illinois has placed on its assertions of personal jurisdiction under the fiduciary shield doctrine. *See, e.g., RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997) ("A federal district court exercising diversity jurisdiction has personal jurisdiction, of course, only if a court of the state in which it sits would have jurisdiction.") (internal quotation marks and citation omitted).

As a general matter, Illinois law regarding the fiduciary shield doctrine does not provide for a tort exception to the doctrine. *See Rollins,* 152 Ill.Dec. 384, 565 N.E.2d at 1318 ("[W]e see no reason to fashion an exception to the fiduciary shield doctrine that will expose employees who engage in tortious conduct within the scope of their employment to the personal jurisdiction of the Illinois courts."). Furthermore, the two cases cited by Plaintiff do not support exercising personal jurisdiction over Ms. Perez. Crucially, personal jurisdiction over a nonresident defendant was not at issue or discussed in either *Veteran Supply or In re Philopulos.* (Although the cases are not crystal clear on this issue, they appear to have not even involved out-of-state defendant-individuals.) Instead of discussing personal jurisdiction, in both cases, the courts moved directly to the substantive question of personal liability under 720 ILCS 5/17-1. *See Veteran Supply,* 1 39 Ill.Dec. 282, 548 N.E.2d at 670 (finding corporate officers personally liable for signing bad checks in violation of the Illinois Deceptive Practices Act, despite the fact that they were acting on behalf of the corporation); *see also In re Philopulos,* 313 B.R. at 280 ("The Debtor is individually liable even though he issued the checks as an agent of [the corporation]."). Precedent teaches that the question of whether Ms. Perez would be liable for violating 720 ILCS 5/17-1, were she an Illinois resident or otherwise subject to suit in Illinois, is not relevant to the question of whether this Court may assert personal jurisdiction over Ms. Perez in the first instance in this suit. *See, e.g., Reimer Express,* 230 F.3d at 944 ("[J]urisdiction and liability are separate inquiries. The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised.") (internal citations omitted).[FN5] Therefore, Plaintiff's arguments regarding the putative individual liability of corporate agents and officers are inapposite. In addition, precedent teaches that *Veteran Supply* and *In re Philopulos* are not properly understood as reaching any implicit holdings concerning the propriety of personal jurisdiction

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

here, as neither case involved an out-of-state defendant who raised the fiduciary shield defense concerning personal jurisdiction. *See, e.g., Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (courts do not reach implicit, unreasoned holdings about unraised jurisdictional issues).

> FN5. The Court also notes that the decision to hold the individuals liable in *Veteran Supply* was specifically grounded on the defendants' status as corporate officers, as opposed to mere employees. *See Veteran Supply Co. v. Swaw,* 192 Ill.App.3d 286, 139 Ill.Dec. 282, 548 N.E.2d 667, 669 (Ill.App.Ct.1989) (noting that "corporate officer status does not insulate [an officer] from individual liability for the torts of the corporation in which he actively participates.") (internal quotation marks and citation omitted). Unlike the defendants in *Veteran Supply,* Ms. Perez has never been an officer of her employer. (Def's Aff.) Thus, *Veteran Supply* is further distinguishable from the present situation.

**\*7** Ms. Perez's contacts on behalf of her employer with the State of Illinois may not provide the basis for personal jurisdiction over her, and Banc Corp has failed to offer or show any other basis for personal jurisdiction. Therefore, the Court grants Ms. Perez's motion to dismiss and dismisses Banc Corp's suit without prejudice because of a lack of personal jurisdiction over Ms. Perez.

## II. The Complaint Independently Fails To State A Claim

Moreover and independently, Ms. Perez argues that Banc Corp's Complaint should be dismissed for failure to state a claim upon which relief can be granted. The Court concludes that dismissal is also warranted under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b).

For civil liability to be established under the applicable section of the Illinois Deceptive Practices Act, Banc Corp must show that the defendant: (1) delivered a check to obtain personal property; (2) knew at the time that the funds in the account were insufficient to pay the check; (3) acted with the intent to defraud; and (4) failed to pay on demand. *See Production, S.A., H20 Specialties, Inc.,* No. 93 C 6935, 1994 WL 630795, at \*2 (N.D.Ill. Nov.9, 1994) (Marovich, J.); *accord, e.g., Veteran Supply,* 139 Ill.N.E.2d at 668. Defendant argues that Banc Corp has failed to sufficiently allege the second and third elements-namely, that Defendant knew that the funds in the Fischbein account were insufficient to pay the check, or that Defendant acted with intent to defraud.

As an initial matter, the Court notes that the heightened pleading requirements of Fed.R.Civ.P. 9(b) apply. As previously explained, "claims which sound in fraud, as Plaintiff's claim does, must be pled with particularity."*Ivanhoe Fin., Inc.,* 2005 WL 1498878, at \*3 ( internal quotation marks and citation omitted); *accord, e.g., Ackerman,* 172 F.3d at 470 (holding that Fed.R.Civ.P. 9(b) requires heightened pleading of all fraud claims in federal court) (citation omitted).[FN6]

> FN6. Banc Corp's claim under the Illinois Deceptive Practices Act, 720 ILCS 5/17-1a, clearly sounds in fraud. That statutory provision is actually part of the Illinois criminal code, although the State also provides a private right of action for civil claims. *See Gearing v. Check Brokerage Corp.,* 233 F.3d 469, 471 (7th Cir.2000) ( "A section of the Illinois Criminal Code provides civil liability for 'deceptive practices,' including the issuance of bad checks. The Illinois law, which imposes significant penalties on those who write bad checks, holds that after certain collection efforts come up dry, the payee of a bad check, or a person subrogated to the rights of the payee, may sue for the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1594100 (N.D.Ill.)
**2006 WL 1594100 (N.D.Ill.)**

Page 8

face value of the check, treble damages up to $1,500, and attorneys fees and court costs. 720 ILCS 5/17-1a."): *First Nat'l Bank of Decatur v. Ins. Co. of N. Amer.,* 424 F.2d 312, 315 (7th Cir.1970) (discussing how the statute prohibits defined "deceptive practice[s]" under Illinois law, and how the Committee Comments to the statutory section similarly explain that the section " 'is designed to cover a great variety of deceptive practices." ') (quoting Committee Comments).

As Ms. Perez explains, the Complaint does not allege the requisite knowledge or fraudulent intent. Moreover, the Complaint does not even allege facts to ground the application of 720 ILCS 5/17-1(B)(d), which provides that "[f]ailure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart, is *prima facie* evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud."720 ILCS 5/17-1(B)(d); *see also Veteran Supply,* 139 Ill.Dec. 282, 548 N.E.2d at 668. Plaintiff has alleged that Check 84652 and Check 84688 (*i.e.,* two distinct checks) were presented for payment approximately 14 days apart, and that each check was dishonored. (*See* Complaint at 1.) However, the Complaint does not state that either of these checks was twice presented and dishonored as 720 ILCS 5/17-1(B)(d) appears to require. Therefore, Banc Corp here has neither alleged that Ms. Perez violated the provisions of section 5/17-1(B)(d) sufficient to present *prima facie* evidence of fraudulent knowledge and intent, nor has it alleged other facts with sufficient particularity as to the fraudulent intent and knowledge requirements of the claim.

**\*8** Accordingly, the extant Complaint fails to state a claim upon which relief may be granted. *See*Fed.R.Civ.P. 9(b). For this independent and sufficient reason, even if the Court had personal juris-

diction over Ms. Perez (and it does not), the Court would grant Ms. Perez's motion and would dismiss Banc Corp's case against her without prejudice.

CONCLUSION

For the foregoing reasons, the Court grants Ms. Perez's motion to dismiss. (D.E.9.) The case is dismissed without prejudice for lack of jurisdiction. Furthermore, and independently, even if there were somehow jurisdiction over Ms. Perez, the case would be dismissed without prejudice for failure to state a claim.

So ordered.

N.D.Ill.,2006.
Banc Corp USA v. Perez
Slip Copy, 2006 WL 1594100 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2007 WL 3087122 (N.D.Ill.)
**2007 WL 3087122 (N.D.Ill.)**

Page 1

**C**
Ojea v. Mazda Motor Corp., Inc.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Fernando A. OJEA, M.D., Plaintiff,
v.
MAZDA MOTOR CORPORATION, INC., Defendant.
**No. 07 C 3635.**

Oct. 18, 2007.

Richard Francis Burke, Jr., Shannon Marie McNulty, Clifford Law Offices, P.C., Chicago, IL, for Plaintiff.
John J. Duffy, Charles Scott Ofstein, Donohue, Brown, Mathewson & Smyth, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

JOHN W. DARRAH, United States District Court Judge.
**\*1** Plaintiff, Fernando A. Ojea, M.D., filed suit against Defendant, Mazda Motor Corporation, Inc. ("Mazda"), asserting strict products liability and negligence. Presently pending before this Court is the Defendant's Motion to Quash Service of Summons.

This action was originally filed on January 19, 2007, in the Circuit Court of Cook County, Illinois. The Clerk of the Court in the Circuit Court of Cook County issued a Fourth Alias Summons on April 30, 2007. Ojea attempted to serve Mazda at the office of the registered agent for Mazda in Chicago, Illinois; but service was refused. Immediately thereafter, Ojea utilized Legal Language Services, a provider of service on foreign defendants, to serve Mazda abroad through the Japanese Central Authority, pursuant to the Hague Convention. Mazda received service on June 19, 2007. This matter was

subsequently removed to this Court on June 28, 2007.

Mazda seeks to quash service of the summons, arguing that under Illinois Supreme Court Rule 102(b), which requires summons to be served within thirty days of its date, the summons is not valid because Mazda received service fifty days after the date the summons was issued.

In ruling on this motion, the Court must apply Illinois State law to conduct that occurred while the action was in State court. *Romo v. Gulf Stream Coach, Inc.,* 250 F.3d 1119, 1122 (7th Cir.2001); *Allen v. Ferguson,* 791 F.2d 611, 616 n. 8 (7th Cir.1986). Service of the Summons and Complaint was effectuated while this action was pending in the Circuit Court of Cook County; thus, Illinois state law is applied.

Illinois law requires that summons be served within thirty days of issuance.Ill. Sup.Ct. R. 102(b). In this case, the summons was issued on April 30, 2007. Mazda did not receive the summons until June 19, 2007, twenty days after the summons had expired. Illinois law does not provide for any exceptions to the thirty-day time limit nor any means by which the time may be extended. Thus, proper service was not effectuated upon Mazda under Illinois law. In order to ensure evenhanded administration of the law, Federal courts must strictly adhere to state rules of procedure, regardless of whether the court believes those rules to be optimal. *McMasters v. United States,* No . 98 C. 6413, 2000 WL 336549 (N.D.Ill., March 28, 2000). Illinois law carves out no exception to the thirty-day rule.FN1

> FN1. The difficulties a plaintiff may encounter when serving a defendant abroad within the time limit imposed by Illinois law raises the issue of whether there may be an exception to the thirty-day time limit when a plaintiff is required to serve a defendant through a central authority under

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
D

the Hague Service Convention. Several other jurisdictions have addressed this issue. *See e.g., Prom v. Sumitomo,* 228 Wis.2d 168, 599 N.W.2d 409 (1999); *Broad v. Mannesmann Anlagenbau,* 141 Wash.2d 670, 10 P.3d 371 (2000); *Paracelsus Healthcare v. Philips Medical Systems,* 384 F.3d 492 (2004); *Kulpa v. Jackson,* 3 Misc.3d 227, 773 N.Y.S.2d 235 (2004). The Illinois Supreme Court has not yet addressed this problem either by case decision or re-examination of Supreme Ct. R. 102.

Ojea argues that the Hague Service Convention applies in this case and preempts state law; therefore, the thirty-day time limit for service does not apply. The scope of the Hague Service Convention is defined in Article 1. "The present Convention shall apply in all cases ... where there is occasion to transmit a judicial or extrajudicial document for service abroad."20 U.S.T. 361; *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Clearly, the Hague Service Convention applies in this case as the summons was in fact transmitted to Mazda abroad. However, while the Hague Service Convention establishes the method of service of process abroad, it does not establish a time limit for service of process. Federal law preempts state law only to the extent that the state law conflicts with the federal law. *Edgar v. Mite Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Because there is no conflict between the provisions of the Convention and the thirty-day time limit imposed under Illinois law, the time limit for service under Ill. Sup.Ct. R. 102(b) is not preempted and applies in this case.

**\*2** For the foregoing reasons, Defendant's Motion to Quash Service of Summons is granted.

N.D.Ill.,2007.
Ojea v. Mazda Motor Corp., Inc.
Slip Copy, 2007 WL 3087122 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 3743712 (N.D.Ill.)
**2006 WL 3743712 (N.D.Ill.)**

Oberth v. Kirth
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois,Eastern
                       Division.
           H. Gunther OBERTH, Plaintiff,
                          v.
    Mary L. KIRTH, Jay V. Krafsur, Darren B. Watts,
    Krafsur Law Group, L.L.C., Dana Rosenthal, Lisa
       Danna and Barbara Knox, Defendants.
                   **No. 06 C 2877.**

                    Dec. 13, 2006.

H. Gunther Oberth, Skokie, IL, pro se.
Terrence Patrick McAvoy, Thomas P. McGarry,
Hinshaw & Culbertson LLP, Chicago, IL, for De-
fendants.

### *MEMORANDUM OPINION AND ORDER*

ROBERT W. GETTLEMAN, United States District
Judge.
*1 Plaintiff H. Günther Oberth initially filed a five-
count pro se complaint in the Circuit Court of Cook
County, Illinois, against defendants Mary L. Kirth,
Jay V. Krafsur, Darren B. Watts, the Krafsur Law
Group, L.L.C., Dana Rosenthal, Lisa Danna and
Barbara Knox alleging libel (Count I), slander
(Count II), defamation of character (Count III), the
improper use of a civil proceeding (Count IV) and
disregarding the Illinois Rules of Professional Con-
duct (Count V). Plaintiff's claims stem from an ini-
tial sexual harassment lawsuit filed against him by
defendant Mary L. Kirth. The United States re-
moved the action to this court and then moved, pur-
suant to § 28 U.S.C. 2679(d)(2), to substitute itself
on behalf Dana Rosenthal, Lisa Danna and Barbara
Knox, all attorneys at the United States Department
of Housing & Urban Development ("HUD").
Plaintiff moved to vacate the removal. On August
3, 2006, this court denied plaintiff's motion to va-
cate and ordered the substitution of the United

States. Both the United States and defendants Kraf-
sur, Watts and the Krafsur Law Group, L.L.C.
("Krafsur defendants"), have moved to dismiss all
counts of plaintiff's complaint pursuant to
Fed.R.Civ.P. 12(b)(6).[FN1] For the reasons set forth
below, defendants' motions to dismiss are granted.

> FN1. The docket does not indicate whether
> Mary Kirth has ever been served with a
> summons.

### FACTS[FN2]

> FN2. Facts are taken from plaintiff's com-
> plaint and are accepted as true for purposes
> of a motion to dismiss under 12(b)(6).

Plaintiff was employed by Hildegard Schniedermei-
er in various capacities at her apartment building at
2632-36 W. Winona St. in Chicago, Illinois. On
February 7, 2003, Mary Kirth, a tenant in the build-
ing, wrote a letter to Ms. Schniedermeier complain-
ing of plaintiff's overtly sexual behavior and sexual
comments directed towards her. Plaintiff alleges
that the statements made in this letter were fabric-
ated stories made by Ms. Kirth after a failed rela-
tionship between her and plaintiff. Plaintiff also al-
leges that Ms. Kirth told other tenants in the build-
ing about plaintiff's harassing behavior and that as a
result of Ms. Kirth's behavior, he suffered emotional
distress, humiliation and loss of community ties.

Ms. Kirth filed a lawsuit against plaintiff and Ms.
Schniedermeier in federal court in July 2003. She
was represented by the Krafsur defendants. While
that suit was pending, HUD initiated an investiga-
tion and began a conciliation process. As a result of
that process Ms. Kirth eventually settled with Ms.
Schniedermeier. The terms of that settlement are re-
flected in a confidential HUD Conciliation Agree-
ment, pursuant to which Kirth dismissed the suit
with prejudice including all claims against plaintiff,
who had refused to participate in the settlement in
any way. According to plaintiff, none of the accusa-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2006 WL 3743712 (N.D.Ill.)
**2006 WL 3743712 (N.D.Ill.)**

tions in Ms. Kirth's lawsuit, particularly the allegations of sexual harassment, were valid. Additionally, plaintiff alleges that he and Ms. Kirth had an ongoing relationship for most of the time period in which Ms. Kirth resided at 2632 W. Winona Street and that she complained about his behavior only after their break up.

According to plaintiff's complaint, the Krafsur defendants and Dana Rosenthal, Lisa Danna and Barbara Knox violated Rule 1.16(a) of the Illinois Rules of Professional Conduct because they "had all the evidence in front of them to know Ms. Kirth's case was bogus, but they decided to push forward."Additionally, plaintiff alleges that the attorneys collectively coerced and intimidated Ms. Schniedermeier into settlement and knew they could "wear her down" because of her old age. Both Ms. Schniedermeier and plaintiff were represented in the underlying lawsuit brought by Ms. Kirth. Plaintiff seeks both compensatory and punitive damages.

### STANDARD OF REVIEW

**\*2** In ruling on a Rule 12(b)(6) motion to dismiss, the court should accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kim v. Kim,* 360 F.Supp.2d 897, 899 (N.D.Ill.2005). A complaint should not be dismissed for failure to state a claim unless it is clear that the plaintiff cannot prove any set of facts entitling him to relief. *Pressalite Corp. v. Matsushita Electric Corp. of America,* 2003 WL 1811530, at \*2 (N.D.Ill. April 4, 2003). There is no requirement to plead specific facts but merely a need to plead a claim for relief and plaintiffs "need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of."*Doe v. Smith,* 429 F.3d 706, 708 (7th Cir.2005).

### DISCUSSION

The United States has moved to dismiss all of plaintiff's counts on the ground that they are barred by the doctrine of sovereign immunity. The Krafsur defendants have moved to dismiss Count I ("liable"), Count II (slander) and Count III (defamation of character) on the ground that they are time-barred and Counts IV (abuse of process) and V (violation of the Illinois Rules of Professional Conduct) for failure to state a claim.

### The United States

The United States moved to dismiss all of plaintiff's claims as barred by the doctrine of sovereign immunity. The Federal Tort Claims Act ("FTCA") allows an individual to sue the federal government when an employee of the federal government, while acting within the scope of his or her employment, causes the individual injury. 28 U.S.C. § 1346(b). The FTCA, however, has an intentional tort exception that does not waive sovereign immunity. *See*28 U .S.C. § 2680(h).Section 2680(h) provides that the FTCA shall not apply to:

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) o f this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations arising out of federal law.

Counts I, II and III are all for various forms of defamation. Under the FTCA, there is no waiver of sovereign immunity allowing the United States to be sued for libel, slander or defamation. *See Jime-*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3743712 (N.D.Ill.)
**2006 WL 3743712 (N.D.Ill.)**

*nez v. United States,* 682 F.2d 1(1st Cir.1982) (the exception covers all claims of defamation). Thus, Counts I, II and III are all barred by sovereign immunity.

**\*3** In Count IV, plaintiff alleges the improper use of a civil proceeding. This appears to be a claim for malicious prosecution. *See Hammond Lead Products, Inc. v. American Cyanamid Co.,* 570 F.2d 668, 673 (7th Cir.1977) (stating that actions for the misuse of a civil proceeding are generally viewed as actions for malicious prosecution). Under the FTCA, a claim for malicious prosecution is barred by sovereign immunity unless the individual defendant is an investigative or law enforcement officer. 28 U.S.C. § 2680(h). Investigative or law enforcement officers are defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations arising out of federal law."*Id.* In the instant case, plaintiff's allegations involve the conduct of three HUD employees, none of whom are investigative or law enforcement officers. Thus, Count IV is also barred by sovereign immunity. In Count V, plaintiff alleges that the HUD lawyers violated the Illinois Rules of Professional Conduct by failing to drop the "bogus" fair housing action brought by Ms. Kirth and for coercing Ms. Schniedermeier into settlement. Specifically, plaintiff alleges that all the defendant attorneys violated Rule 1.16 of the Illinois Rules of Professional Conduct. Illinois courts have held that a violation of the Rules of Professional Conduct does not, in and of itself, expose an attorney to civil liability for damages. *See e.g. Nagy v. Beckley,* 218 Ill.App.3d 875, 881, 161 Ill.Dec. 488, 578 N.E.2d 1134 (1st Dist.1991) (holding that a violation of the Rules is not "an independent form of tort liability."). Regardless of whether the attorneys did in fact violate Rule 1.16, such a violation does not create an independent cause of action pursuant to which plaintiff can claim damages. Thus, Count V is dismissed for failure to state a claim.

**The Krafsur Defendants**

The Krafsur defendants have moved to dismiss Count I (libel), Count II (slander) and Count III (defamation of character) as time-barred. The statute of limitations governing defamation claims provides that claims of libel or slander "shall be commenced within one year after the cause of action accrued."735 ILCS 5/13-201. A cause of action for defamation generally accrues on the date the alleged defamatory statements are published to a third party. *Naeemullah v . Citicorp S erv., I nc.,* 7 8 F.Supp.2d 783, 791 (N.D.Ill.1999). In the instant case, plaintiff alleges that Ms. Kirth made the defamatory statements in her letter to Ms. Schniedermeier on February 7, 2003. Although the Krafsur defendants did not write the letter, in his response to the Krafsur defendants' motion to dismiss, plaintiff indicated that Counts I through III are "directed at all defendants as all defendants perpetuated the defamation claims literally on a daily basis."Thus, all defendants are claimed to have committed the alleged defamation that occurred on February 7, 2003. It was on that date that the limitations period began and plaintiff had until February 7, 2004 to bring his claim. Plaintiff did not file this action, however, until more than three years later on April 19, 2006. Thus, Count I is time-barred and is therefore dismissed.

**\*4** In Count II, plaintiff alleges slander. Specifically, he alleges that Ms. Kirth told another tenant in the building that plaintiff sexually assaulted and harassed her. Plaintiff alleges that the defamatory statements were republished throughout the underlying litigation against him and therefore contends that the cause of action did not accrue until that time. In a defamation action, however, privilege is an affirmative defense that can be raised, and "one type of recognized absolute privilege is the attorney litigation privilege."*Edelman, Combs and Latturner v. Hinshaw and Culbertson,* 338 Ill.App.3d 156, 164, 273 Ill.Dec. 149, 788 N.E.2d 740 (1st Dist.2003). The privilege provides that "an attorney at law is absolutely privileged to publish false and defamatory matter of another concerning communications preliminary to a proposed judicial pro-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3743712 (N.D.Ill.)
**2006 WL 3743712 (N.D.Ill.)**

Page 4

ceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."*Id.* The only requirement is that the defamatory communications pertain to the proposed or pending litigation. *Popp v. O'Neil,* 313 Ill.App.3d 638, 642, 246 Ill.Dec. 481, 730 N.E.2d 506 (2d Dist.2000). In the instant case, it is undisputed that the alleged defamatory statements pertained to the underlying litigation. Thus, even if plaintiff's claims are not time-barred, as a matter of law, the defendants were absolutely privileged to publish the statements. Thus, Count II is dismissed.

Count III (defamation of character) is duplicative of Counts I and II and based on the same factual allegations. For the reasons discussed above, Count III is dismissed.

In Count IV, plaintiff alleges that the Krafsur defendants improperly used a civil proceeding. This count will be viewed as a claim for malicious prosecution. *Hammond Lead Products,* 570 F.2d at 673. To state a claim for malicious prosecution, the plaintiff must allege: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff."*Swick v. Liautaud,* 169 Ill.2d 504, 512, 215 Ill.Dec. 98, 662 N.E.2d 1238 (1996). Voluntary dismissals are generally not considered terminations in favor of the plaintiff. *Sutton v. Hofeld,* 118 Ill.App.3d 65, 68, 73 Ill.Dec. 584, 454 N.E.2d 681 (1st Dist.1983). The Illinois Supreme Court has held, however, that a plaintiff may, under very limited circumstances, establish that an underlying suit was terminated in his favor where the lawsuit did not end on the merits. *Cult Awareness v. Church of Scientology, Int'l.,* 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347, 1353 (1997) (holding that a "a favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause."). The court noted that if

the dismissal was merely a formal means of securing a settlement, it could not serve as the basis for a claim for malicious prosecution. *Id.*

**\*5** In the instant case, plaintiff cannot establish that the underlying litigation between himself and Ms. Kirth terminated in his favor. After extensive litigation in that case, the parties reached settlement and the entire case was voluntarily dismissed with prejudice. The court never reached the merits of Ms. Kirth's claims against plaintiff and the action was dismissed as a means of securing the settlement between Ms. Kirth and Ms. Schniedermeier. Thus, Count IV is dismissed.

In Count V, plaintiff alleges that the defendants violated Rule 1.16 of the Illinois Rules of Professional Conduct. Illinois courts, however, do not recognize an cause of action against an attorney for violating the Rules of Professional Conduct. *See Nagy,* 218 Ill.App.3d at 881, 161 Ill.Dec. 488, 578 N.E.2d 1134. Thus, Count V is dismissed.

### CONCLUSION

For the reasons stated above, defendants' motions to dismiss are granted.

N.D.Ill.,2006.
Oberth v. Kirth
Slip Copy, 2006 WL 3743712 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.